**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANNA RAIMONDI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-07780 |
| | ) | |
| CENTRAL DUPAGE HOSPITAL as | ) | Judge Matthew F. Kennelly |
| successor to DELNOR HOSPITAL, | ) | Magistrate Judge Jeffery Cole |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

I. MATERIAL UNDISPUTED FACTS ................................................................................2

  A. Plaintiff's Employment History and Creation of Stroke Navigator Position.........................2

  B. Raimondi Performed Exempt Duties ...................................................................................4

  C. Raimondi At Times Expressed Concerns With Her FTE Designation ...................................6

II. ARGUMENT ....................................................................................................................7

  A. Legal Standards for Summary Judgment ............................................................................7

  B. Plaintiff's Statutory Claims Under the FLSA and IMWL for Unpaid Compensation Fail
     as a Matter of Law ...........................................................................................................8

    1. Nearly all of Raimondi's claims for unpaid wages under FLSA/IMWL are Time-Barred .8

    2. The FLSA/IMWL claims fail because Raimondi was Properly Classified as Exempt .......9

      a. Raimondi Was Paid on a Salary Basis During the Time Period Applicable to
        her FLSA and IMWL Claims ........................................................................................10

      b. Raimondi Was Properly Classified As Exempt Under the Learned
        Professional Exemption that Applies to Registered Nurses ...........................................10

      c. Raimondi Was Properly Classified As Exempt Under the Administrative
        Exemption Because She Performed Duties That Were Critical To The
        Stroke Program And She Exercised Discretion and Independent Judgment .................13

      d. Raimondi Was Exempt Under the Combination Exemption ..........................................15

  C. Raimondi's Illinois Wage Payment and Collection Act Claim Fails as a Matter of Law........15

  D. Plaintiff's Common Law Claims Fail Because They Are Preempted ...................................16

  E. Plaintiff's Breach of Contract Claim Fails as a Matter of Law .................................................17

  F. Raimondi's Unjust Enrichment Claim Fails as a Matter of Law ..............................................19

CONCLUSION....................................................................................................................20

i

## TABLE OF CASES

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)

*Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016)

*De la Rama v. Illinois Dept. of Hum. Serv.*, 541 F.3d 681, 685 (7th Cir. 2008)

*Bankston v. State of Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995)

*Resurrection Home Health Serv. v. Shannon*, 2013 IL App. (1st) 111605 at ¶ 23 (2013)

*Crowe v. Examworks, Inc.*, 136 F. Supp. 3d 16 (D. Mass. 2015)

*Rieve v. Coventry Health Care,* 870 F.Supp.2d 856, 862-866 (C.D. Cal. 2012)

*Withrow v. Sedgwick Claims Mgt. Serv., Inc.*, 841 F.Supp.2d 972, 986-987 (S.D. W. Va. 2012)

*Williams v. Genex Serv., Inc.,* 2014 WL 4388360 (D. Md. September 4, 2014)

*Powell v. American Red Cross*, 518 F.Supp.2d 24 (D. D.C. 2007)

*Blanchar v. Standard Ins. Co.,* 736 F.3d 753, 756 (7th Cir. 2013)

*Demos v. City of Indianapolis*, 302 F.3d 698, 704-705 (7th Cir. 2002)

*Schmidt v. Eagle Waste* Recycling, 599 F.3d 626

*Enger v. Chicago Carriage Cab Co*., 812 F. 3d 565, 568-69 (7th Cir. 2016)

*Deschepper v. Midwest Wine and Spirits, Inc.*, 84 F. Supp. 3d 767-779-80 (N.D. Ill. 2015)

*Sorensen v. CHT Corp.*, 2004 WL 442638 at *6 (N.D. Ill. March 10, 2004)

*Sherman v. Ryan*, 392 Ill. App. 3d 712, 732 (1st Dist. 2009)

*McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 485 (1997)

*Collins v. Associated Pathologists, Ltd.,* 676 F. Supp. 1388, 1408 (C.D. Ill. 1987)

*Kraftco Corp. v. Kolbus,* 1 Ill.App.3d 635, 638 (Ill. App. 4th Dist. 1971)

*Perez v. Abbott Laboratories,* 1995 WL 86716 at *8 (N.D. Ill. February 27, 1995)

*Robinson v. BDO Seidman*, 367 Il.App.3d 366, 369 (Ill. App. 1st Dist. 2006)

*HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989)

*Lapine v. Edward Marshall Boeme*, 1990 WL 43572 at *10 (N.D. Ill. March 28, 1990)

*Cleary v. Philip Morris, Inc.,* 656 F. 3d 511, 517 (7th Cir. 2011)

Defendant CDH-Delnor Health System ("CDH-Delnor," which is improperly named in the caption) submits this memorandum of law in support of its motion for summary judgment as to all claims made by Plaintiff Anna Raimondi ("Raimondi").

## **INTRODUCTION**

As a Stroke Program Navigator ("Stroke Navigator") for Delnor Hospital, Raimondi's job was to ensure that stroke patients received high-quality treatment from arrival through their discharge from the hospital. Raimondi used her skills as a registered nurse to analyze the treatment that stroke patients received, identify areas in which patient care could be improved, and recommend ways to trouble-shoot processes in the stroke program. Raimondi also played a key role in compliance with standards for Delnor to maintain its accreditation as a primary stroke center until she no longer held the position of Stroke Navigator effective September 3, 2013.

Raimondi contends in this lawsuit, filed two years after her separation, that Defendant CDH-Delnor misclassified her as exempt from overtime compensation in her position of Stroke Navigator and therefore owes her damages under the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL") despite the fact that the statute of limitations for each of those claims is – at most – three years. In an effort to avoid the statute of limitations issue, Raimondi also contends that CDH-Delnor is liable to her for unpaid wages for breach of contract, unjust enrichment, and violation of the Illinois Wage Payment and Collection Act ("IWPCA"). Because no reasonable jury could find in favor of Raimondi as to any of her claims, judgment as a matter of law should be entered in favor of CDH-Delnor and against Raimondi as to all counts in her Complaint.

## I.    MATERIAL UNDISPUTED FACTS

**A.    Plaintiff's Employment History and Creation Of Stroke Navigator Position.**

Raimondi was hired by Delnor Community Hospital ("Delnor" or "Delnor Hospital") as a Registered Nurse ("RN") on July 18, 2005. (Defendant's Statement of Material Facts As To Which There is No Genuine Issue ("Def's Facts") at ¶ 5). At all relevant times, Raimondi was an at-will employee. (*Id.*)

In 2009, Delnor began the process of seeking certification of its stroke program from the Joint Commission on Accreditation of Health Care Organizations (the "Joint Commission").[1] (*Id.* at ¶ 9). One of the Joint Commission's requirements for certification was that a hospital employ a Stroke Navigator who was a licensed RN. (*Id.* at ¶ 13). Consequently, Delnor created a Stroke Program Navigator position, and Delnor's Director of Rehabilitation Services, Ann-Louise Pinkawa, drafted the job description and determined that the position should be a .5 FTE.[2] (*Id.* at ¶ 14). Based on the job duties, the Stroke Navigator position was classified as "Exempt." (*Id.* at ¶ 15).

In 2010, when Delnor's first Stroke Navigator left, the position remained a .5 FTE and Raimondi applied for the .5 FTE Stroke Navigator position. (*Id.* at ¶ 17). Pinkawa selected Raimondi for the Stroke Navigator position because Raimondi had the educational qualifications, state license, critical care experience, and professional relationships within the hospital that the Stroke Navigator position required. (*Id.* at ¶ 18). At the time, Raimondi was working up to 60 hours per pay period in two separate non-exempt positions. (*Id.* at ¶ 19). Nevertheless, she

---

[1] The Joint Commission is a regulatory body that oversees quality of care at hospitals and accredits health care organizations. (*Id.* at ¶ 10). The Joint Commission provides a stringent certification process for stroke programs at hospitals to ensure that quality care is being delivered. (*Id.* at ¶ 11). Delnor needed certification to be able to attract and treat stroke patients. (*Id.* at ¶ 12).

[2] A .5 FTE is a part time position, which is sometimes expressed as 20 hours per week (40 hours per bi-weekly pay period) to benchmark it as one-half of a full-time position. (*Id.* at ¶ 16).

accepted the Stroke Navigator position knowing that it was a .5 FTE. (*Id.* at ¶ 20). Delnor also permitted Raimondi to work some shifts as a nurse in the ICU. (*Id.* at ¶ 21). Raimondi clocked in and out for both positions to record her hours. (*Id.* at ¶ 22). Raimondi was paid for all of the hours she was clocked in during the time period she simultaneously held those two positions.[3] (*Id.* at ¶ 23).

In the Spring of 2011, Delnor merged into Central DuPage Health (which did business as Central DuPage Hospital among other names), and formed CDH-Delnor Health System. (*Id.* at ¶ 26). Raimondi (and other Delnor employees) remained on Delnor Hospital's payroll until the end of December 2011, when CDH and Delnor merged their payroll systems. (*Id.* at ¶ 27). At that point, CDH-Delnor determined that Raimondi could no longer work in both the Stroke Navigator position and the ICU position because she could not hold both an exempt position (Stroke Navigator) and a non-exempt position (ICU staff nurse). (*Id.* at ¶ 28). Raimondi was allowed to choose which of the two positions she wanted to retain and she chose the .5 Stroke Navigator position. (*Id.* at ¶ 29).

Starting in February 2012, Raimondi was paid a bi-weekly salary of $1,516.40 as Stroke Navigator, which did not vary from week to week. (*Id.* at ¶ 30). At the end of August 2013, CDH-Delnor informed Raimondi that it was eliminating the Stroke Navigator position, effective September 3, 2013.[4] (*Id.* at ¶ 31).

---

[3] When Raimondi accepted the Stroke Navigator position in November 2010 she moved from a non-exempt position as a Lean Assistant. (*Id.* at ¶ 24). While she was clocking in and out for both positions, her compensation varied and thus during the time period prior to merger of Delnor and CDH payroll systems, Raimondi was compensated on an hourly basis for the position of Stroke Navigator. (*Id.* at ¶ 25).
[4] In addition to her final salary payment, Raimondi received a payout for her accrued but unused PTO (paid time off) and the equivalent of four weeks compensation as notice pay. (*Id.* at ¶ 32).

**B.** **Raimondi Performed Exempt Duties.**

The Stroke Navigator position Raimondi held required that the incumbent be a licensed Registered Nurse, and have a Bachelor of Science in nursing, at least two years of critical care-related nursing experience, and clinical expertise relevant to stroke patients. (*Id*. at ¶ 33). In addition, the Stroke Navigator was expected to be "a clinical expert responsible for the development, implementation, and maintenance of the Stroke Program consistent with the requirements set forth by the Joint Commission for certified primary stroke centers." (*Id*. at ¶ 34). Raimondi admits she performed the duties and responsibilities of the position as detailed in the job description, core competencies, and performance evaluations for Stroke Navigator, and as summarized in her curriculum vitae. (*Id*. at ¶ 35).

The Stroke Navigator's primary duties and responsibilities as stated in the job description (and incorporated into the core competencies and the 2012 evaluation) included:

- Assuming responsibility for the ongoing program management of stroke across the continuum from admission to discharge;

- Serving as a clinical expert for complex and/or highly specialized patient care situations to hospital staff/ personnel and other health care professionals within the organization and community;

- Promoting and developing personal and professional growth and development of self and patient care staff;

- Establishing and fostering collaborative working relationships with physicians involved in the care of the stroke patient; and

- Facilitating, supporting, and co-leading, with the medical director, the stroke team committee. (*Id*. at ¶ 36).

In performing the duties as detailed in the job description, core competencies,[5] and performance evaluations for Stroke Navigator, Raimondi used her nursing skills to analyze

---

[5] Core competencies – which Raimondi admitted she performed – including, among other things, analysis of the medical charts of stroke patients to identify instances when treatment was not meeting standards of care,

4

patient medical charts, including ensuring neurologists were following stroke protocols. (*Id*. at ¶ 38). In addition, chart abstracting for critical values was a key part of Raimondi's job – she read patient medical charts the majority of days in her position of Stroke Navigator. (*Id*. at ¶ 39). Raimondi used the medical information she gleaned from the charts to identify areas for process improvements and to meet Joint Commission standards necessary to maintain certification. (*Id*. at ¶ 40). Raimondi also was responsible for rounding on patients while they were in the hospital to make sure proper stroke care was being provided. (*Id*. at ¶ 41). As part of her stroke team quality assurance duties, Raimondi led the monthly stroke team quality assessment and process improvement meetings where stroke cases were reviewed to identify and discuss process improvements. (*Id*. at ¶ 42).

Raimondi's own testimony about specific tasks and accomplishments reflected her use of discretion and independent judgment. (*Id*. at ¶ 43-48). For example, Raimondi's emphasis on education for staff and EMS workers led to a process improvement for the use of the clot-dissolving drug Alteplase (otherwise identified as "tPA") that increased the percentage of patients who received tPA treatment. As Raimondi described it, there was "a direct correlation between my work and process improvement, that it meant helping lives." (*Id*. at ¶ 43). Raimondi identified ways to improve the process for the emergency medical services (EMS) teams to treat a suspected stroke patient before arrival at the hospital, and she spoke with the emergency department clinical educator and coordinator to get stroke patients to the hospital in a timely fashion. (*Id*. at ¶ 44). As Raimondi described the Stroke Navigator position in her own *curriculum vitae*, she was "responsible for developing policies, procedures, protocols reflecting current clinical practice guidelines." (*Id*. at ¶ 45). Raimondi provided input and

---

understanding the pathophysiology of a stroke, patient education and teaching abilities, stroke program quality assessment skills, the skill to chair and lead the stroke process improvement team, and the ability to understand and speak to stroke program certification and recertification as a resource for hospital staff. (*Id*. at ¶ 37).

recommendations as to changes to stroke program protocols and policies. (*Id*. at ¶ 46). She collaborated with the Stroke Program Medical Director, the Neurosciences Director, and other health care professionals in departments throughout the hospital, including the Emergency Department and Intensive Care Unit. (*Id*. at 48).

## C.   Raimondi At Times Expressed Concerns With Her FTE Designation.

Prior to the merger with CDH, Raimondi at times discussed with Pinkawa that she thought her Stroke Navigator position should be increased from a .5 FTE. (*Id*. at ¶ 59). In early 2012, Pinkawa submitted a request to increase the Stroke Navigator position beyond a .5 FTE but the increase was not granted. (*Id*. at ¶ 60). Pinkawa did not promise Raimondi any additional compensation beyond what Raimondi was paid, nor did anyone else promise anything to Raimondi in terms of payment for hours Raimondi contends that she worked while not clocked in during the time period prior to the Delnor-CDH merger. (*Id*. at ¶ 61-63). Pinkawa left CDH-Delnor effective March 3, 2012. (*Id*. at ¶ 64).

Following Pinkawa's departure, Jennifer Biede, the Neurosciences Director based at CDH, became Raimondi's supervisor in March or April of 2012. (*Id*. at ¶ 65). Raimondi told Biede that she was putting in more time than her .5 FTE part-time status and suggested that either the position's FTE be increased or more support provided in the way of other personnel to complete some of the duties. (*Id*. at ¶ 66). Biede looked at opportunities to share the workload, and sent Laura Pittner, the Stroke Coordinator at CDH, to work with Raimondi on site at Delnor from time to time and also helped Raimondi prioritize the work to be done. (*Id*. at ¶ 67). Despite Raimondi's concerns about her pay, Raimondi admits that:

- No one promised her she would be paid for any hours worked in the Stroke Navigator position beyond the .5 FTE compensation (*Id*. at ¶ 68);

- No one promised or agreed she would be paid overtime (time-and-a-half) for hours she worked in excess of 40 hours in a workweek as Stroke Navigator (*Id.* at ¶ 69);

- No one ever told her she would not work more than 20 hours in the Stroke Navigator position (*Id.* at ¶ 70);

- The Stroke Navigator position remained a .5 FTE throughout the time period that Raimondi held the job (*Id.* at ¶ 71); and

- While on the Delnor payroll, Raimondi clocked in and out for both the Stroke Navigator and ICU positions to record her hours and was paid for all of the hours she was clocked in during the time period she simultaneously held those two positions (*Id.* at ¶ 73).

Despite these undisputed facts, Raimondi is seeking, under all counts in her Complaint, to be paid back pay "for all the hours that she worked in the stroke program in excess of the hours already paid" and overtime for all hours she worked in excess of 40 hours in a week. For the reasons set forth below, CDH-Delnor is entitled to summary judgment in its favor as to all counts in the Complaint.

## II.   ARGUMENT

### A.   <u>Legal Standards for Summary Judgment.</u>

The court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has identified parts of the record that "it believes demonstrate the absence of a genuine issue of material fact" the non-moving party must "go beyond the pleadings" and identify portions of the record demonstrating that a fact is genuinely disputed." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). In analyzing a summary judgement motion, courts construe all reasonable inferences in the non-movant's favor, but the non-movant "is not entitled to the benefit of inferences that are supported only by speculation or conjecture." *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016) (citation omitted). The non-

moving party must present more than just bare allegations; she must present evidence on which a jury could reasonably find in her favor. *De la Rama v. Illinois Dept. of Hum. Serv.*, 541 F.3d 681, 685 (7th Cir. 2008) (citations omitted).

**B.** **Plaintiff's Statutory Claims Under the FLSA and IMWL for Unpaid Compensation Fail as a Matter of Law.**

Summary judgment should be entered in favor of CDH-Delnor as to Raimondi's unpaid FLSA and IMWL (Counts I and II) because (1) nearly all of the claims are time-barred and (2) Raimondi was exempt from overtime under the professional, administrative, and combination exemptions from overtime.

**1.** **Nearly all of Raimondi's claims for unpaid wages under FLSA/IMWL are Time-Barred.**

The FLSA allows covered individuals to recover for unpaid minimum wages and overtime compensation, but only for a period of up to two years, unless the plaintiff can prove a willful violation, in which case the statutory period for recovery is three years. 29 U.S.C. §255(a). The burden is on the plaintiff to prove a willful violation for purposes of the statute of limitations. *Bankston v. State of Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995). Under the IMWL, a three-year period applies to all civil actions for unpaid minimum wages or overtime compensation. 820 ILCS 105/12.

Nearly all of Raimondi's statutory claims for unpaid compensation under the FLSA and IMWL are time-barred. Raimondi filed her Complaint on September 3, 2015 – thus, under the two-year FLSA statute of limitations, she has no claim because she did not work in the Stroke Navigator position after September 3, 2013. Raimondi also cannot prove a three-year limitations period applies under the FLSA because she has no evidence of a willful violation. And even if

Raimondi could meet her burden to establish a willful violation such that the three-year limitations period applies, any claim arising before September 3, 2012 is time-barred.

   **2.    The FLSA/IMWL claims fail because Raimondi was Properly Classified as Exempt.**

   Raimondi's FLSA and IMWL claims additionally fail because she was properly classified as exempt from overtime eligibility at all times relevant to her FLSA and IMWL claims. Employees who work in a bona fide executive, administrative or professional capacity are exempt from overtime eligibility. 29 U.S.C. § 213(a)(1). The IMWL includes the same exemptions and follows the law applicable to FLSA overtime claims. *Resurrection Home Health Serv. v. Shannon*, 2013 IL App (1st) 111605 at ¶ 23 (2013).

   An overtime exemption applies if the position in question satisfies both the salary test and the primary duty test. An employee is paid on a salary basis if she "regularly receives each pay period … a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. 541.602. The minimum salary required for exemption is $455 per week, or $910 bi-weekly. 29 C.F.R. 541.600. Regarding the primary duty test, an employee's primary duty is the "principal, main, major or most important duty that the employee performs." 29 C.F.R. 541.700. Because Raimondi was compensated on a salary basis during the time period relevant to her FLSA and IMWL claims, and because her primary duties involved work that is exempt under the professional, administrative, and combination exemptions, her FLSA and IMWL claims must be dismissed.

### a. Raimondi Was Paid on a Salary Basis During the Time Period Applicable to her FLSA and IMWL Claims.

Because it is undisputed that Raimondi was paid $1,516.40 bi-weekly on a salary basis throughout the time period applicable to her FLSA and IMWL claims, the salary basis prong for overtime exemptions is satisfied. Due to the statutory limitations period, at most the FLSA and IMWL claims can only go back three years from the filing of the Complaint, meaning any claim for allegedly unpaid wages prior to September 3, 2012 is time-barred. Once Delnor and CDH merged their payroll systems, Raimondi was paid a set salary for her position of Stroke Navigator that did not vary from February 2012 going forward. Thus, because Raimondi was paid a salary that was not subject to reduction based on quality or quantity of work performed and, as discussed below, Raimondi performed exempt duties, Raimondi received all the compensation she was due as a salaried-exempt Stroke Navigator during the entire 2012 to 2013 time period applicable to her statutory claims under the FLSA and IMWL.[6]

### b. Raimondi Was Properly Classified As Exempt Under the Learned Professional Exemption that Applies to Registered Nurses.

Raimondi was properly classified as exempt under the Learned Professional exemption because she: (1) performed work requiring advanced knowledge; (2) the advanced knowledge is in a field of science or learning; and (3) the advanced knowledge was acquired by a prolonged course of specialized intellectual instruction. 29 C.F.R. 541.301. The regulation specifically states that "[r]egistered nurses who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption." *Id.*

---

[6] Raimondi was paid at an hourly rate as Stroke Navigator for the time period from November 2010 through December 2011 prior to the merger of the Delnor and CDH payroll systems and was paid for the hours she was clocked in. (Def's Facts ¶ 22-23; 73). To the extent Raimondi is claiming that she worked off-the-clock hours and should be compensated for such hours, those claims are time-barred under FLSA and IMWL.

In obtaining her nursing degree, Raimondi gained advanced knowledge in a field of science or learning through a prolonged course of specialized instruction. 29 C.F.R. 541.301(a)(2),(3). Moreover, Raimondi used her nursing skills to analyze and interpret medical records to determine whether stroke patients were receiving quality care and to identify areas in which process improvements could be made. When Raimondi identified an issue or concern with patient treatment, she went directly to physicians, nurse managers, and department heads with her recommendations and used her nursing and critical care skills to identify solutions and suggest process improvements such as:

- Improving the process for the use of tPA that resulted in an increase in the percentage of patients who received tPA treatment. As Raimondi described it, there was "a direct correlation between my work and process improvement, that it meant helping lives." (Def's Facts at ¶ 43).

- Identifying whether physicians had used the Stroke Program's order sets and following up with physicians if they had not done so. (*Id.* at ¶ 50)

- Educating the emergency department clinical educator and coordinator regarding process improvements she had identified to get stroke patients to the hospital in a timely fashion. (*Id.* at ¶ 51).

- Identifying and troubleshooting the reasons for delays in CT scans. (*Id.* at ¶ 52).

- Rounding on patients to ensure proper stroke care was being provided and providing answers to patients or family members with questions. (*Id.* at ¶ 53).

Raimondi's situation is strikingly similar to other cases involving nursing professionals in which courts have analyzed and applied the Learned Professional exemption. In *Crowe v. Examworks, Inc.*, 136 F. Supp. 3d 16 (D. Mass. 2015), the court found that the Learned Professional exemption applied where the nurses' primary duties entailed: (1) identifying the applicable guidelines for a given request for medical treatment; (2) reviewing medical records to determine if the treatment guideline was met; (3) deciding whether to approve the request or refer it for physician's review based on their assessment; and (4) writing a summary statement

11

that included the rationale for the determination. *See also Rieve v. Coventry Health Care, Inc.,* 870 F. Supp. 2d 856, 862-866 (C.D. Cal. 2012) (finding nurse case manager was an exempt Learned Professional under the FLSA; granting summary judgment for employer as to FLSA overtime claim)[7]; *Withrow v. Sedgwick Claims Mgt. Serv., Inc.*, 841 F. Supp. 2d 972, 986-987 (S.D. W. Va. 2012) (granting summary judgment for employer on overtime claim by utilization review nurse where court determined she was exempt under the Learned Professional exemption); *Williams v. Genex Serv., LLC,* 2014 WL 4388360 at *10 (D. Md. Sept. 4, 2014) (granting summary judgment to employer where "any reasonable fact finder would have to agree with [employer] that [plaintiff] exercised independent judgment and was engaged in non-clerical work, such that her primary duties require 'advanced' knowledge that satisfies the duties test for the FLSA [and state statute] professional exemption.") *aff'd* 809 F. 3d 103 (4th Cir. 2015); *Powell v. American Red Cross*, 518 F. Supp. 2d 24, 42-43 (D. D.C. 2007) (determining that nurse used her advanced nursing knowledge and education in determining whether military personnel deployed overseas had met their medical requirements and that despite her performance of other nonexempt job tasks, her medical assessment of deployed personnel was of principal importance to organization's worldwide mission). Because Raimondi met the salary basis test and was exempt under the Learned Professional exemption, CDH-Delnor is entitled to summary judgment on Raimondi's FLSA and IMWL claims.

---

[7] However, the court in *Rieve*, found nurses to be non-exempt under California's statutory provisions related to overtime, which are analyzed differently than FLSA claims. In contrast to California's unique statutory analysis for nurses, Illinois follows the FLSA with respect to application of the Learned Professional exemption for nurses. *See Resurrection Home Health Serv.,* 2013 IL App (1st) 111605 at ¶ 23 (2013).

        **c.**    **Raimondi Was Properly Classified As Exempt Under The Administrative Exemption Because She Performed Duties That Were Critical To The Stroke Program And She Exercised Discretion and Independent Judgment.**

Raimondi's work also qualified as exempt under the Administrative exemption because her primary duty as a Stroke Navigator required her to exercise discretion and independent judgment with respect to matters of significance, and her primary duty also involved the performance of office / non-manual work related to the management or general business operations of Delnor's Stroke program.[8] *See* 29 C.F.R. 541.201(b), 541.202(b).

Raimondi's primary duty of ensuring that Delnor's Stroke Program provided quality care to stroke patients and maintained its Joint Commission certification – in addition to being critical to CDH-Delnor's business operations – met a number of the factors that are considered in determining whether an employee exercised independent judgment and discretion. *See* 29 C.F.R. 541.202(b). For example: Raimondi had the authority to formulate, affect, interpret, and implement policies and operating practices for the stroke program; she identified where processes were not being followed and then independently followed up with physicians, nursing directors, and department managers; she led the stroke team meetings to review stroke patient treatment and discuss process improvements; and she exercised discretion and judgment when she determined which patient treatment issues required further follow up. *See Crowe,* 136 F. Supp. 3d at 16 (finding that FLSA Administrative exemption applied to nurses whose duties involved clinical quality assurance).

Moreover, Raimondi was instrumental in Joint Commission compliance including the major project in 2012 to gain recertification for the Stroke Program. By planning for and participating in the Joint Commission survey that resulted in Delnor's recertification as a primary

---

[8] The Administrative exemption applies if the employee's work is associated with a unit of the business; the work does not have to involve the general business operations of the entire organization. *See* 29 C.F.R. 541.202(b).

stroke center, Raimondi was "involved in planning long- or short-term business objectives," she performed "work that affects business operations to a substantial degree" and she "carrie[d] out major assignments in conducting the operations of the business." 29 C.F.R. 541.202(b). Indeed, had Delnor not retained its certification as a primary stroke center, the consequences would have been patients lost to other hospitals and a commensurate loss of revenue. (Def's Facts at ¶ 12).

Case law based on analogous facts demonstrates that Raimondi fit the administrative exemption. For example, in *Crowe,* 136 F.Supp.3d at *39-42, the court held that the FLSA Administrative exemption applied because the nurses' duties involved clinical quality assurance, compliance, and exercise of discretion and independent judgment. The employees' use of applicable medical guidelines (similar to the Joint Commission standards in Raimondi's case) did not eliminate their discretion. There, as with Raimondi, the guidelines served to emphasize the need for independent judgment and application of medical knowledge. Just as in *Crowe*, as Stroke Navigator, Raimondi used her skills to analyze and identify instances where staff did not follow stroke protocols or Joint Commission procedures or timelines for treatment were not met. Raimondi then took steps to correct situations, and recommended corrections and improvements. In so doing, Raimondi compared or evaluated courses of conduct and made decisions after considering the various possibilities. *See also Blanchar v. Standard Ins. Co.,* 736 F.3d 753, 758-59 (7th Cir. 2013) ("though [plaintiff] lacked final decision-making authority, his work involved a great deal of discretion and independent judgment" that qualified for application of the Administrative exemption); *Demos v. City of Indianapolis*, 302 F.3d 698, 704-705 (7th Cir. 2002) (affirming summary judgment for employer where "no reasonable jury could conclude that [plaintiff] was at any time anything but an exempt administrative employee."). Because Raimondi met the salary basis test and was exempt under the administrative professional

14

exemption, CDH-Delnor is entitled to summary judgment on Raimondi's FLSA and IMWL claims.

### d.   Raimondi Was Exempt Under The Combination Exemption.

As noted above, Raimondi's primary duties made her exempt under the Learned Professional and Administrative exemptions; therefore, to the extent that no one exemption covers all of her duties, the Combination exemption in the FLSA regulations also applies. Employees who perform a combination of exempt duties as set forth in the regulations for executive, administrative, professional, outside sales and computer employees qualify for exemption from overtime requirements. "In other words, work that is exempt under one section … will not defeat the exemption under any other section." 29 C.F.R. 541.708; *See also Schmidt v. Eagle Waste Recycling, Inc.*, 599 F.3d 626, 631-33 (affirming district court's application of the FLSA combination exemption where individual performed duties under administrative and outside sales exemptions). Therefore, Raimondi's primary duties, when analyzed under this provision of the regulations, also establish that she was exempt under the FLSA and by extension the IMWL.

## C.   Raimondi's Illinois Wage Payment and Collection Act Claim Fails as a Matter of Law.

Raimondi's claim under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IMWL") must fail because Raimondi cannot establish that the parties entered into any contract or agreement to pay overtime or any other wages beyond what she already received. The IWPCA does not establish a substantive right to overtime pay or any other wages. Rather, it mandates overtime pay only to the extent the parties' contract or agreement requires such pay. "The duty to pay wages or final compensation arises out of a contract of employment, an employment policy, or an agreement between the parties." 56 Ill. Admin. Code 300.640; *see*

15

*also Enger v. Chicago Carriage Cab Co*., 812 F. 3d 565, 568-69 (7th Cir. 2016) (affirming motion to dismiss claim under IWPCA due to plaintiff's failure to allege existence of an agreement by which employer was obligated to pay them wages).

Raimondi admitted that no one promised her that she would receive overtime pay for hours worked beyond 40 in a workweek. (Def's Facts at ¶ 69). Raimondi also admitted that no one promised her that she would receive more than the compensation she actually received for the hours that she was clocked in while working at Delnor or the bi-weekly salary she received for her .5 FTE position as Stroke Navigator. (*Id.* at ¶ 63, 68). Because there is no genuine issue of material fact as to the existence of any contract, policy, or agreement requiring CDH-Delnor to pay any wages or final compensation other than what Raimondi already received, Raimondi cannot establish a claim under the IWPCA.

**D.** **Plaintiff's Common Law Claims Fail Because They Are Preempted.**

The FLSA preempts common-law claims that are co-extensive with its coverage. *See Deschepper v. Midwest Wine and Spirits, Inc.*, 84 F. Supp. 3d 767, 779-80 (N.D. Ill. 2015) ("To the extent that a plaintiff asserts that an employer wrongfully withheld compensation in violation of state common law based on the same factual allegations supporting an FLSA claim, her state law claim is preempted."). Raimondi's breach of contract and unjust enrichment claims seek overtime that allegedly was not paid – the same relief that she is seeking via the FLSA and IMWL. Because Raimondi cannot recover under breach of contract or unjust enrichment theories based on the same facts and for the same remedies available to her under the FLSA, her breach of contract and unjust enrichment claims are preempted. *See also Sorensen v. CHT Corp.*, 2004 WL 442638 at *6-7 (N.D. Ill. March 10, 2004) (where plaintiffs conceded that their

16

unjust enrichment claim is based on the same factual assertions as their FLSA claims, they were not entitled to bring state common law claims that seek relief identical to that under the FLSA).

**E.**      <u>**Plaintiff's Breach of Contract Claim Fails as a Matter of Law.**</u>

Even if Plaintiff's breach of contract claim is not preempted, the undisputed facts establish that the parties did not reach agreement as to definite and certain terms either to (1) pay overtime or (2) increase Raimondi's compensation and therefore Raimondi's breach of contract claim fails as a matter of law.

To withstand summary judgment on a breach of contract under Illinois law, a plaintiff must prove the existence of a contract, substantial performance by the plaintiff, defendant's breach of the contract, and damages. *Sherman v. Ryan*, 392 Ill. App. 3d 712, 732 (1st Dist. 2009) *appeal denied*, 234 Ill. 2d 552. The terms of the contract must be clear and definite. *McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 485 (1997). The terms also must be sufficiently definite that the court can determine whether the contract has been kept or broken. *Collins v. Associated Pathologists, Ltd.,* 676 F. Supp. 1388, 1408 (C.D. Ill. 1987) (a court cannot enforce a promise that is uncertain and indefinite). The terms cannot be so uncertain that a court would have to, in essence, write the contract itself. *Kraftco Corp. v. Kolbus,* 1 Ill.App.3d 635, 638 (Ill. App. 4th Dist. 1971). The requirement of definiteness applies with equal or greater force to oral contracts. *Perez v. Abbott Laboratories,* 1995 WL 86716 at *8 (N.D. Ill. Feb. 27, 1995).

Raimondi lacks **any** evidence that she and her employer agreed to clear and definite terms as to the extra compensation she now claims she is owed. Raimondi admitted in her deposition that there was no agreement that she would be paid overtime for hours worked over 40 in a workweek in her position of Stroke Navigator. (Def's Facts at ¶ 69). She also lacks any evidence of clear and definite terms such that she has an enforceable contractual right to payment

of compensation beyond what she was paid. To the extent that Raimondi attempts to argue that CDH-Delnor breached a contract to increase her salary beyond what she was paid as a .5 FTE, her own testimony demonstrates that there was no meeting of the minds for payment beyond her salary or any definite terms for a salary increase. (*Id.* at ¶ 61-62, 66-68, 72). Rather than a definite agreement with enforceable terms, Raimondi testified repeatedly that the "agreement" centered on general statements that the part-time status of her position would be "reviewed." (*Id.*).

Raimondi testified that when Ann Pinkawa was her supervisor, there were no promises made but that they discussed "if" the FTE for the position were to be increased, then other issues would be discussed such as whether any back pay was due. (*Id.* at ¶ 61-62). Likewise, Raimondi testified that once Jennifer Biede became her supervisor, Raimondi told Biede that she was putting in more time than her .5 FTE part-time status and Raimondi suggested that *either* the position's FTE be increased *or* more support be provided in the way of other personnel to complete some of the duties. (*Id.* at ¶ 66). Biede provided support, including helping Raimondi to prioritize and assigning Laura Pittner, the stroke coordinator from CDH, to work on-site at Delnor, and dividing up tasks to prepare for the Joint Commission recertification. (*Id.* at ¶ 67). As these facts show, at no time did Raimondi and CDH-Delnor reach a specific and definite agreement that Raimondi would be paid more than her salary, or that she would receive overtime pay. (*Id.* at ¶ 61-63, 66-70).

Discussion of the possibility of a future review of Raimondi's part-time status is similar to cases in which courts have found an employer's "informal expression of goodwill and hope" to be insufficiently clear and definite to sustain a breach of contract claim. *See, e.g., Robinson v. BDO Seidman, LLP*, 367 Ill. App. 3d 366, 369 (Ill. App. 1st Dist. 2006) (affirming dismissal of

18

breach of contract claim by former employee where alleged agreement did not have clear and definite terms). Moreover, even if Raimondi could establish that CDH-Delnor agreed to a review and possibly increase her .5 FTE, there is no evidence as to the terms of any contemplated increase. Raimondi testified that she did not know whether an increase to full-time or .75 FTE would have been warranted. (*Id.* at ¶ 72). No enforceable contract can be found where even the plaintiff admits there is such vagueness and uncertainty. *See Collins,* 676 F. Supp. at 1408-09 (court is unable to enforce a contractual term requiring payment of discretionary compensation that lacked any predetermined formula to calculate the amount because court cannot enforce a promise that is uncertain and indefinite).

Because no reasonable jury could find in favor of Raimondi on her breach of contract claim, summary judgment should be entered in favor of CDH-Delnor as to Count IV of Raimondi's Complaint.

**E. Raimondi's Unjust Enrichment Claim Fails as a Matter of Law.**

Even if Raimondi's unjust enrichment claim is not preempted, summary judgment is still proper on this claim because Raimondi has not shown that CDH-Delnor unjustly retained a benefit to her detriment or that the alleged retention of a benefit violates the fundamental principles of justice, equity, and good conscience. *See HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). In fact, Raimondi admits that she was paid for all of the hours that she was clocked in prior to the merger of the Delnor and CDH payrolls. And, subsequent to the merger of the two payroll systems, Raimondi was properly classified as an exempt employee and was paid the salary to which she was entitled to get the job done – no matter how many or how few hours it took. When (as here) an employee is paid the salary to which she was entitled, there is no claim for unjust enrichment. *See Lapine v. Edward Marshall*

*Boeme, Inc.*, 1990 WL 43572 at *10 (N.D. Ill. March 28, 1990) (finding that where plaintiff provided store manager services as part of the job for which she was hired, and was paid the salary to which she was entitled, there can be no unjust enrichment).

Summary judgment also is appropriate on Raimondi's unjust enrichment claim because it is premised on the same facts as her claims under the FLSA, the IMWL, the IWPCA, and her breach of contract claims, and thus fails for the same reason that those claims fail. *See Cleary v. Philip Morris, Inc.,* 656 F. 3d 511, 517 (7th Cir. 2011) (an unjust enrichment claim that is premised on the same improper conduct as alleged in another claim will "stand or fall" based on the disposition of the related cause of action).

## CONCLUSION

For all the foregoing reasons, Defendant CDH-Delnor respectfully requests that the Court grant summary judgment in its favor.

Dated:  October 28, 2016                          Respectfully submitted,

                                                    CDH-DELNOR HEALTH SYSTEM


                                         By:      *s/ Norma W. Zeitler*
                                                  One of Its Attorneys

Norma W. Zeitler
Jennifer M. Cerven
BARNES & THORNBURG LLP
One N. Wacker Drive, Suite 4400
Chicago, Illinois  60606
(312) 357-1313
(312) 758-5646 FAX
norma.zeitler@btlaw.com
jennifer.cerven@btlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 28, 2016, the foregoing Defendant's Memorandum of Law in Support of Summary Judgment was filed with the Clerk of the Court using the CM/ECF System, which will send notification of filing to the following counsel of record:

> Jessica Tovrov
> Goodman Tovrov Hardy & Johnson LLC
> 105 West Madison Street, Suite 1500
> Chicago, Illinois 60602

> _s/ Norma W. Zeitler_

DMS JCERVEN 4393668v2