**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANNA RAIMONDI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15 C 7780** |
| | ) | |
| **CENTRAL DUPAGE HOSPITAL as successor to DELNOR HOSPITAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Anna Raimondi has sued her former employer, Central DuPage Hospital (CDH), alleging that the hospital failed to compensate her for all of the hours that she worked in violation of the Fair Labor Standards Act (FLSA), the Illinois Minimum Wage Law (IMWL), the Illinois Wage Payment and Collection Act (IWPCA), and Illinois common law. CDH has moved for summary judgment on all claims. For the reasons stated below, the Court grants summary judgment in favor of CDH on Raimondi's IWPCA and breach of contract claims and on part of her unjust enrichment claim but otherwise denies CDH's motion for summary judgment.

## Background[1]

Raimondi is a registered nurse who lives in Sugar Grove, Illinois. She earned a bachelor's degree in nursing in 2010 and a master's degree in nursing in 2014. In 2005,

[1] The facts are taken from the complaint and the parties' motions on summary judgment. Where facts are in dispute, all reasonable inferences are made in favor of Raimondi.

she began working at Delnor Hospital—which later merged with Central DuPage Hospital—as a full-time staff nurse in the ICU. Raimondi was paid on an hourly basis.

In 2010, CDH began the process of seeking certification of its stroke program from the Joint Commission on Accreditation of Health Care Organizations (Joint Commission). The Joint Commission requires certified hospitals to employ a stroke navigator who is responsible for ensuring that stroke patients receive high-quality treatment. The navigator is also responsible for ensuring that the hospital is in compliance with the Joint Commission's standards for accreditation. CDH began the process of hiring a navigator and wrote a job description for the position. The description listed the job responsibilities, which included:

- developing and maintaining clinical protocols and care paths;
- monitoring adherence to clinical protocols and reporting outcome data to the hospital's stroke team;
- implementing and coordinating stroke response procedures with the stroke team;
- demonstrating advanced knowledge in the assessment, diagnosis, and treatment of stroke patients; and
- conducting clinical rounds on stroke patients.

The job description indicated that the applicant must, at a minimum, be an Illinois licensed registered professional nurse. CDH defined the navigator position as ".5 FTE," meaning that the position was limited to 20 hours of work per week. The hospital also classified the navigator as a salaried position and exempt from wage and hours laws.

Raimondi applied and was selected for the navigator position. She also continued to work in the ICU. Raimondi would spend 30 hours per week working at the hospital, 20 hours per week working as the navigator, and 10 hours per week working in the ICU. She continued to clock in and out for each position and received the same

hourly rate for both the navigator and ICU positions.

Raimondi had numerous responsibilities as navigator. Her top priority was to review patient charts and enter demographic and other data into a computer system. She would also review patient charts to determine whether treating doctors and nurses were following established protocols. Raimondi was also responsible for "rounding" on patients, which involved meeting with patients to determine whether they were receiving proper care and to answer any questions about treatment.

Despite the fact that the hospital budgeted 20 hours per week for the navigator position, Raimondi regularly worked 40 hours or more per week performing her responsibilities for that position. Despite this, CDH typically paid Raimondi for only 20 hours of work. In a few instances, Raimondi received additional pay for some of her extra hours, but the amount was insufficient to cover all of the hours she had worked.

Raimondi notified other CDH employees that she repeatedly worked more than 20 hours per week in the navigator position. She spoke on multiple occasions with Ann Pinkawa, the director of rehabilitation services and Raimondi's supervisor until March 2012. *See* Def.'s Statement of Material Facts (SOMF), Ex. C (Pinkawa Dep.) at 30:18–31:6. Pinkawa instructed her to clock in for all hours that she worked—including those in excess of 20 hours per week—in order to keep track of the number of hours actually required for the position. Pl.'s Statement of Undisputed Facts (SUDF), Ex. C (Raimondi Dep.) at 134:13–136:15. Pinkawa then spoke with others at CDH in order to ask the hospital to increase the navigator time allotment by .5 FTE, but the human resources committee denied her request. Pinkawa Dep. at 31:7–14. Raimondi says that Pinkawa made two more identical requests, both of which were denied. Raimondi Dep. at

143:7–22. Afterwards, Pinkawa told Raimondi that she expected Raimondi to perform the job within the .5 FTE limitation and that Raimondi should not clock in for more than 20 hours per week. *Id*. at 134:2–17. Pinkawa never expressly told Raimondi to work without being punched in. *Id*. at 311:13–15. But Raimondi continued to work more than 20 hours per week in order to meet her supervisor's demands and complete all of the navigator responsibilities. She did not clock in for the extra hours that she worked, and she was not paid for these hours.

In the spring of 2011, Delnor Community Health System merged into Central DuPage Health, doing business as Central DuPage Hospital. Raimondi remained on the Delnor payroll system until December 2011 when the two systems merged. At that time, CDH informed Raimondi that she could no longer work in two positions and that she could choose which position to keep. Raimondi chose to stay on as stroke navigator. CDH says that, beginning February 2012, it paid Raimondi a bi-weekly salary of $1,516.40. Raimondi says that her income varied from week to week.

After the merger, Pinkawa left CDH, and Jennifer Biede, the neurosciences director, took over the stroke program. Before leaving, Pinkawa told Biede that CDH had denied her request to increase the navigator position to 1.0 FTE, and she asked Biede to look into the issue again. Pl.'s SUDF, Ex. B (Pinkawa Dep. II) at 53:10–20. Raimondi also told Biede on numerous occasions that she was having difficulty accomplishing the navigator responsibilities during the allotted time, *see* Def.'s SOMF, Ex. A (Biede Dep.) at 23:6–14; Raimondi Dep. at 119:17–120:9, and that she was working more than 20 hours per week, see Raimondi Dep. at 415:15–417:10. In response, Biede looked for other employees who could provide support and instructed

Raimondi on how to prioritize her work flow. Biede Dep. at 27:24–28:3. According to Biede, Raimondi's priorities as navigator were to ensure that the hospital was up-to-date with its data entry and to have daily face time with the stroke team. *Id*. at 28:20–29:1.

In August 2013, CDH eliminated the stroke navigator program. The hospital terminated Raimondi's employment on September 3, 2013.

Raimondi filed suit against CDH on September 3, 2015. She alleges in count 1 of her complaint that CDH refused to pay her for hours that she worked beyond the required 20 hours per week in violation of the FLSA and that CDH failed to pay her at an overtime rate for any hours worked over 40 hours per week also in violation of the FLSA. Compl. ¶¶ 42–44. Raimondi further alleges that CDH acted willfully. She also alleges that the same conduct violates the IMWL (count 2) and the IWPCA (count 3). Raimondi alleges in count 4 that, by creating a situation in which she was required to work more than 20 hours per week, CDH breached the employment contract it had with her. *Id.* ¶¶ 54–57. Finally, Raimondi alleges in count 5 that because CDH did not compensate her for all of the hours she worked as navigator, CDH was unjustly enriched by her work. *Id.* ¶¶ 59–62.

**Discussion**

CDH has moved for summary judgment on all five of Raimondi's claims. The hospital first argues that Raimondi's FLSA claims are barred by the statute of limitations. The hospital also argues that even if the claims are not barred, the navigator position is exempt from the FLSA under either the learned professional or administrative exemptions. CDH argues that the IMWL claim fails for the same reason and that the IWPCA claim fails because Raimondi cannot demonstrate the existence of a contract.

Finally, the hospital argues that Raimondi's common law claims are preempted and, in the alternative, that she has not provided evidence sufficient to sustain those claims.

A court considering a motion for summary judgment takes all facts and reasonable inferences in favor of the non-moving party. *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012). Summary judgment is warranted when the moving party shows that there is no genuine dispute as to any material fat and he is entitled to judgment as a matter of law. *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 735 F.3d 568, 570 (7th Cir. 2013).

## I. FLSA

Under the FLSA, an employer is required to pay an employee the minimum wage for each hour that she is employed as well as "a premium wage (one and one-half times the regular rate of pay)" for each hour that the employee works beyond forty hours per week. *Id*.; *see also* 29 U.S.C. § 206(a), 207(a). This standard applies unless the employee falls within one of the exemptions set out in the FLSA. *Schaefer*, 679 F.3d at 572. The exemptions are narrowly construed, and the burden is on the employer to demonstrate that the employee is covered by one of the exemptions. *Id*. CDH first argues that Raimondi's FLSA claims are barred by the statute of limitations and, alternatively, that the navigator position falls into an exemption under the FLSA. Because the statute of limitations determination depends, initially, on whether there is a genuine dispute regarding Raimondi's status as exempt, the Court considers the exemption issue first.

### A. Exemption

CDH argues that the navigator position falls into any one of three exemptions

under the FLSA: the learned professional exemption, the administrative exemption, and the combination exemption. Therefore, the hospital argues, Raimondi cannot sustain an FLSA claim based on hours worked in this position.

**1. Learned professional exemption**

To qualify for the learned professional exemption, "an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a).

CDH argues that Raimondi's primary duties as navigator required advanced knowledge in the field of nursing and therefore that the position qualifies for the learned professional exemption. Def.'s Reply in Supp. of its Mot. for Summ. J. at 7–8. CDH first cites the federal regulations interpreting the FLSA, which indicate that "[r]egistered nurses who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption." 29 C.F.R. § 541.301(e)(2). CDH also points to the navigator job description, which indicates that an applicant must be an Illinois registered professional nurse. *See* Def.'s SOMF, Ex. E (Petrella Decl.) at Ex. 9. The hospital argues that because it required the navigator to be a registered nurse—and because Raimondi herself is a registered nurse—any work she performed in the navigator position falls under the learned professional exemption.

Under the regulations, however, the key question is whether Raimondi's primary duties, as she actually performed them, required use of advanced knowledge acquired through a course of specialized instruction. *See* 29 C.F.R. § 541.301(a)(1) ("The employee must *perform* work requiring advanced knowledge." (emphasis added)).

Therefore the fact that the hospital sought and hired a registered nurse does not carry the day if Raimondi did not actually perform work that required use of her specialized knowledge as a nurse.

CDH argues that Raimondi's primary duties as navigator did require her to apply specialized knowledge acquired through her nursing education. CDH contends that her primary duties included (1) interpreting medical records to determine whether stroke patients received appropriate care; (2) performing patient rounds to assess the quality of patient care and answer questions; and (3) improving the process for use of a particular drug to treat stroke patients, among other things. Def.'s Mem. in Supp. of its Mot. for Summ. J. at 11. Raimondi agrees that she was responsible for these tasks but contends that most of her work did not actually require a nursing degree and could be performed by someone with "far less skill and education." Pl.'s Resp. to Def.'s SOMF ¶ 38. More importantly, Raimondi argues that her primary duty as navigator was data entry and that this responsibility involved no advanced knowledge whatsoever.

"Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). An employee's primary duty is "that which is of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of his or her time." *Demos v. City of Indianapolis*, 302 F.3d 698, 705 (7th Cir. 2002). As navigator, Raimondi was responsible for collecting specific information about each stroke patient, tracking whether the hospital was meeting its own guidelines, and entering the data into an Excel spreadsheet. Raimondi Dep. at 449:9–15. Raimondi has provided evidence from which a reasonable jury could find

that CDH prioritized this task over any other navigator responsibility. She testified during her deposition that Biede made it clear that data entry was a priority. *See* Raimondi Dep. at 218:18–21. And when Raimondi had limited time remaining in her allotted hours, Biede indicated that she should prioritize data entry over other tasks such as rounding on patients. *Id*. at 218:9–18. In an e-mail to Raimondi, Biede indicated that she should be entering data from at least five charts every day. *Id*. at Ex. HH. At one point, Biede instructed Raimondi that she wanted Raimondi to enter all the data from charts created in May—approximately twenty-five—into the system within one week. *Id*. at 505:6–9. Raimondi testified that each chart takes around ninety minutes to complete, meaning that Biede was requesting at least 37.5 hours of data-entry work over a one-week period. *Id*. at 505:12–19. Biede herself testified that, in terms of the stroke program, the priority is "to be current with your data" and that "everything is driven by [the hospital's] data." Pl.'s SUDF, Ex. A (Biede Dep. II) at 29:20–21, 38:23–24. A reasonable factfinder could therefore conclude that Raimondi's primary duty as navigator was data entry.

Further, a reasonable factfinder could conclude that this data entry did not require use of specialized nursing knowledge. Although Biede testified that nursing knowledge was necessary to abstract the data from patient charts, she also testified that a lot of the data the navigator collected was demographic data such as the patient's gender and date of birth, as well as procedural information such as what time the patient arrived at the hospital and what time he or she received a CT scan. *Id*. at 31:17–20. Raimondi also testified that the data she gathered mainly concerned patient demographics and whether hospital personnel were complying with established

procedures set out by the Joint Commission. *See* Raimondi Dep. at 450:17–21. Raimondi argues—and the Court agrees—that a reasonable factfinder could conclude that this data collection and entry did not require advanced knowledge or a course of specialized instruction. CDH is not entitled to summary judgment based on application of the learned professional exemption.

**2. Administrative exemption**

To qualify for the administrative exemption, an employee's primary duty must be "the performance of office or non-manual work directly related to the management . . . of the employer" and must include "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2)–(3). The exercise of discretion typically involves "the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Further, the exercise of discretion "must be more than the use of skill in applying well-established techniques, procedures or specific standards" and "does not include . . . recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work." 29 C.F.R. § 541.202(e).

The Court finds that a genuine dispute exists regarding whether the navigator position falls into this exemption, for reasons similar to those discussed in the previous section. Raimondi has provided evidence from which a reasonable factfinder could conclude that her primary duty was to enter data from the charts of stroke patients and that this does not qualify as an exercise of discretion and independent judgment. Thus a reasonable factfinder could determine that Raimondi's job did fall within the administrative exemption under the FLSA.

### 3. Combination exemption

CDH's last argument regarding Raimondi's FLSA claim is that the navigator position falls under the combination exemption. This exemption indicates that an employee whose primary duty involves a combination of tasks—each of which falls under a different exemption—is still exempt under the FLSA. 29 C.F.R. § 541.708. "In other words, work that is exempt under one section of this part will not defeat the exemption under any other section." *Id*. But Raimondi has shown that a genuine dispute exists regarding whether data entry—which a reasonable factfinder could determine was her primary duty—qualifies for either the learned professional or administrative exemption. Therefore a genuine dispute exists regarding whether Raimondi's primary duties fall under either of the exemptions and thus whether the navigator position is exempt under the combination exemption.

## B. Statute of limitations

CDH also argues that Raimondi's FLSA claims are time-barred because she failed to file her complaint within the statute of limitations. "The FLSA presumes a two-year statute of limitations unless an employee can show that an employer acted willfully," in which case the statute of limitations is three years. *Irwin v. Wisconsin*, No. 92-2509, 1993 WL 134051, at *14 (7th Cir. Apr. 28, 1993); *see also* 29 U.S.C. § 255. Raimondi filed her complaint on September 3, 2015. Under the typical statute of limitations, Raimondi can assert FLSA claims based only on conduct that occurred on or after September 3, 2013. But CDH terminated Raimondi's employment on September 3, 2013, and thus Raimondi did not perform any work for CDH during the two-year limitations period. For this reason, even if Raimondi's position was not exempt under

the FLSA, there is no conduct within the limitations period on which she can base an FLSA claim, unless she can demonstrate willfulness. If there is a genuine dispute regarding whether CDH acted willfully in failing to compensate her as required by the FLSA, Raimondi can maintain an FLSA claim based on uncompensated hours worked from September 2012 through her termination in September 2013.

"An employer acts willfully . . . where he knows or shows reckless disregard for whether his actions are unlawful under the FLSA." *Bankston v. Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995). Raimondi alleges in her complaint that CDH knowingly misclassified the navigator position as salaried—and therefore exempt from wage and hour laws—in an attempt to avoid its FLSA obligations. Compl. ¶ 12. Thus to survive summary judgment on the issue of willfulness, Raimondi must present evidence from which a reasonable factfinder could infer (1) that CDH knew or recklessly disregarded the fact that she was not receiving compensation for overtime hours; and (2) that CDH knew or recklessly disregarded the fact that it failed to compensate her for these hours because it misclassified her as exempt under the FLSA. *See Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1281 (11th Cir. 2008).

Raimondi has provided evidence from which a reasonable factfinder could conclude that CDH knew she was working more than 20 hours per week and was not receiving compensation for those hours. Raimondi told Pinkawa that she was working more than 20 hours per week. Pinkawa told her to stop clocking in for those extra hours because the hospital would not pay for them, but also knew that Raimondi could not accomplish the navigator responsibilities in 20 hours per week. Similarly, Biede

stressed the importance of completing data entry even when she already knew that Raimondi had exceeded her allotted hours for the week. Thus a genuine dispute exists regarding whether CDH recklessly disregarded the fact that Raimondi was not being paid for hours worked over 20 hours per week.

A genuine dispute also exists regarding whether CDH knowingly misclassified Raimondi as exempt under either the learned professional or administrative exemptions. As discussed above, a genuine dispute exists regarding whether Raimondi's primary duty as navigator was to collect and enter data. A reasonable juror could infer from Raimondi's evidence that CDH recklessly disregarded this fact. Biede repeatedly told Raimondi that data entry was her priority and should be completed before other tasks such as patient rounding. *See* Raimondi Dep. at 218:9–21. Biede also stated during her deposition that the navigator's priority is "to be current with your data" and that "everything is driven by [the hospital's] data." Biede Dep. II at 29:20–21, 38:23–24. Finally, another employee, Teresa Speranza, shadowed Raimondi during her time as navigator and reported to Biede that Raimondi spent an estimated 17.3 hours per week on data entry tasks. *See* Pl.'s SUDF, Raimondi Dep. at Ex. B. A reasonable juror could infer that CDH based the exempt classification on other navigator responsibilities, while disregarding the fact that data entry was Raimondi's primary duty.

A genuine dispute also exists regarding whether CDH knowingly or recklessly disregarded the fact that this data entry did not fall under either FLSA exemption. First, CDH does not argue that Raimondi's data entry required the use of discretion and independent judgment, as required for the administrative exemption. CDH argues instead that Raimondi's other duties required discretion and that these duties were in

fact her primary responsibilities. But the Court has already concluded that a reasonable juror could infer that CDH recklessly disregarded the fact that data entry was Raimondi's primary duty. Thus a reasonable juror could find that CDH willfully misclassified the navigator position as exempt under the administrative exemption.

A reasonable juror could also find that CDH willfully misclassified the navigator position as exempt under the learned professional exemption. Both Biede and Raimondi testified that a substantial portion of the data Raimondi collected was demographic, which arguably does not require any advanced or specialized knowledge. Although CDH contends that Raimondi's nursing expertise was required to abstract the data from medical charts, it has not offered any evidence of data she collected in order to demonstrate that expertise was necessary. Thus a genuine dispute exists as to whether CDH recklessly disregarded the fact that the data entry did not fall under the learned professional exemption.

The Court therefore concludes that a reasonable juror could infer that CDH willfully misclassified Raimondi as exempt in order to avoid its obligations under the FLSA. *See Morgan*, 551 F.3d at 1281 (affirming a jury's determination of willfulness based on findings that the employer knew the employees spent most of their time performing non-exempt duties). Were a jury to make this finding, Raimondi would be able to maintain a claim under the FLSA for the period from September 3, 2012 through September 3, 2013. For this reason, the Court denies CDH's motion for summary judgment on count 1.

## II. IMWL

Courts evaluate claims under the IMWL using the same standard applied to

claims under the FLSA. *See Jae Ryong Ryou v. Jae Woong Yoon*, 2016 IL App (1st) 151341-U ¶ 24; *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 376 (7th Cir. 2005). Therefore the Court denies CDH's motion for summary judgment on the IMWL claim for the same reasons discussed in the previous section. Further, the statute of limitations for IMWL claims is three years, 820 ILCS 105/12(a), meaning that Raimondi is not required to demonstrate willfulness in order to pursue her IMWL claims that fall within the three-year period before she filed suit.

## III. IWPCA

The IWPCA authorizes claims only for compensation due under a contract or agreement. *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012). Thus to prevail on a claim under the IWPCA, the plaintiff "must first show that he had a valid contract or employment agreement." *Id*. The plaintiff does not need to show the existence of a formal written contract; an agreement can be a manifestation of mutual assent between the parties. *Zabinsky v. Gelber Grp., Inc.*, 347 Ill. App. 3d 243, 249, 807 N.E.2d 666, 671 (2004).

The Court finds that there is no genuine dispute regarding whether CDH agreed to provide Raimondi with additional compensation for the hours she worked beyond her allotted time. Raimondi admits that neither Pinkawa nor anyone else promised to compensate Raimondi for the hours that she worked without clocking in. Pl.'s Resp. to Def.'s SOMF ¶¶ 61–63. She also admits that after the merger, no one promised her any compensation beyond the agreed salary for 20 hours of work per week. *Id*. at ¶¶ 68–69. No reasonable factfinder could find that CDH agreed to provide Raimondi with the compensation she is now requesting. The Court therefore grants summary

judgment in favor of CDH on count 3.

## IV. Common law claims

Raimondi also brings two common law claims: breach of contract and unjust enrichment. CDH argues that both of these claims are preempted by the FLSA. It also argues in the alternative that there is no genuine dispute as to any fact material to these causes of action.

### A. Preemption

The FLSA preempts any state law claims brought based on the same set of facts that seek the same relief available under the FLSA. *See Sorensen v. CHT Corp.*, Nos. 03 C 1609 & 03 C 7362, 2004 WL 442638, *5 (N.D. Ill. Mar. 10, 2004); *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 659–60 (N.D. Ill. 2007). Therefore if a state law claim for breach of contract or unjust enrichment seeks only unpaid overtime compensation or minimum wages guaranteed by the FLSA, the claim is preempted. *Nicholson v. UTi Worldwide, Inc.*, No. 3:09-CV-722-JPG-DGW, 2010 WL 551551, *6 (S.D. Ill. Feb. 12, 2010). But the FLSA does not preempt common law claims that seek "something other than what the FLSA can provide." *Id*. Thus a common law claim for "gap time—wages for fewer than 40 hours of work per week at a rate greater than the minimum wage" is not preempted by the FLSA. *Sanchez v. Haltz Constr., Inc.*, No. 09 C 7531, 2012 WL 13514, *8 (N.D. Ill. Jan. 4, 2012) (internal quotation marks omitted); *see also Nicholson*, 2010 WL 551551, at *6.

Raimondi claims that CDH (1) failed to compensate her at her regular rate for hours that she worked beyond 20 hours per week; and (2) failed to compensate her at the overtime rate for hours that she worked beyond 40 hours per week. She does not

claim that CDH failed to provide her with minimum wage. To the extent that Raimondi's common law claims seek compensation for hours she worked over 40 hours per week, they are preempted by the FLSA. But Raimondi's claims for compensation for the hours she worked between 20 and 40 hours per week are not preempted by the FLSA. The Court therefore grants summary judgment in favor of CDH on the common law claims to the extent they are based on unpaid overtime, but otherwise denies the motion on the basis of preemption.

**B. Merits**

CDH argues that Raimondi's breach of contract claim fails because no reasonable factfinder could conclude that the parties had a definite agreement to pay Raimondi for the hours she worked over 20 hours per week. CDH also argues that the unjust enrichment claim fails because, after the merger, Raimondi was a salaried employee and therefore she cannot bring a claim of unjust enrichment based on performing work that was within her job description.

In order to bring a claim for breach of contract, the plaintiff must show the existence of a valid and enforceable contract whose essential terms are "definite and certain." *Midland Hotel Corp. v. Reuben H. Donnelly Corp.*, 118 Ill. 2d 306, 314, 515 N.E.2d 61, 65 (1987); *see also Miller v. MacMurray Coll.*, 2011 IL App (4th) 100988-U ¶ 44. The Court agrees that Raimondi has not provided evidence from which a reasonable factfinder could conclude that the parties had a definite agreement to compensate Raimondi for the extra hours that she worked. Raimondi has conceded that no one at CDH—either before or after the merger—promised any additional compensation beyond the amount she was paid for 20 hours per week. Pl.'s Resp. to

Def.'s SOMF ¶¶ 61–63. Further, Raimondi has not provided evidence from which a reasonable factfinder could infer that CDH promised to limit her hours to 20 per week. In fact, Raimondi has conceded that no one made her any such promise. Pl.'s Resp. to Def.'s SOMF ¶ 70. Raimondi has therefore failed to point to evidence from which a reasonable factfinder could determine that the parties had an agreement whose terms were sufficiently definite to support a breach of contract claim.

But a reasonable factfinder could determine that CDH was unjustly enriched. A plaintiff bringing an unjust enrichment claim must show "that defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 497, 607 N.E.2d 165, 177 (1992). Both CDH and Raimondi agree that CDH classified the position as .5 FTE, meaning that the company only planned to compensate the navigator for 20 hours of work per week. Further, Raimondi testified that her understanding was that she would only be required to work 20 hours per week to complete the job, and that she signed employment paperwork to this effect. Raimondi Dep. at 82:3–5, 84:11–85:17, 112:10–113:13. But it quickly became apparent, to both Raimondi and her supervisors, that she could not complete the navigator responsibilities within the .5 FTE. Despite this fact, Raimondi says that her supervisors still expected her to complete her job and instead asked her not to clock in for hours she worked over her allotment. Taking the facts in the light most favorable to Raimondi, the evidence shows that she put in well over the anticipated 20 hours per week as navigator and yet CDH would not pay her for the extra time. A reasonable factfinder could therefore conclude that CDH unjustly received the benefit of Raimondi's work without compensating her for all of her efforts. The Court

therefore denies CDH's motion for summary judgment on count 5.

## Conclusion

For the foregoing reasons, the Court denies CDH's motion for summary judgment [dkt. no. 36] on the FLSA claim (count 1) and the IMWL claim (count 2). The Court denies CDH's motion for summary judgment on the unjust enrichment claim (count 5) to the extent that it seeks compensation for hours worked between 20 and 40 hours per week, and otherwise grants summary judgment in favor of CDH on this claim. The Court also grants CDH's motion for summary judgment on the IWPCA claim (count 3) and the breach of contract claim (count 4). The case is set for a status hearing on April 5, 2017 at 9:30 a.m. for the purpose of setting a trial date.

MATTHEW F. KENNELLY
United States District Judge

Date: March 30, 2017